217 P.3d 286 (2009)
Amber L. KAPPELMAN, Petitioner,
v.
Theodore J. LUTZ, Respondent.
No. 80996-8.
Supreme Court of Washington, En Banc.
Argued February 24, 2009.
Decided September 17, 2009.
*287 Gordon Thomas Carey, Jr., Attorney at Law, Portland, OR, for Petitioner.
Jackson H. Welch, Duggan Schlotfeldt & Welch PLLC, Vancouver, WA, for Respondent.
J.M. JOHNSON, J.
¶ 1 Amber Kappelman was injured while riding on Theodore Lutz's motorcycle when the motorcycle hit a deer. In Kappelman's suit for damages, the trial court disallowed evidence that Lutz did not have a motorcycle endorsement and violated the conditions of his instructional permit. The court also gave an instruction to the jury on the lesser duty of one confronted by a sudden emergency. The jury returned a verdict for Lutz. The Court of Appeals affirmed. We affirm the decision of the Court of Appeals.

FACTS AND PROCEDURAL HISTORY
¶ 2 Respondent Theodore Lutz took the petitioner Amber Kappelman[1] for a ride on his motorcycle at dusk on a state highway in an unincorporated area. Lutz did not have a motorcycle endorsement on his license as required by RCW 46.20.500(1), amended by Laws of 2009, ch. 275, § 4 (effective July 26, 2009) (redefining class of vehicles requiring special endorsement). Lutz had an instructional permit, which prohibited him from carrying passengers or operating a motorcycle during hours of darkness.[2]
*288 ¶ 3 The motorcycle was traveling over the 55 mile per hour speed limit when Lutz saw a deer off to his left, coming down toward the road.[3] In less than a second, the deer reached the shoulder of the road. Lutz realized the deer was going to enter the road and swerved to the right of his lane, away from the deer. He also began to decelerate by a combination of light braking and downshifting. The deer entered the roadway, crossed the oncoming lane of traffic, and entered Lutz's lane. At 50 feet from impact, Lutz realized he was not going to be able to avoid hitting the deer and stood on the brakes hard, causing the bike to skid. The motorcycle hit the deer. Between three and four seconds elapsed from the time Lutz first saw the deer until impact.
¶ 4 Kappelman was injured and sued Lutz for damages. At trial, Lutz moved to exclude any evidence that he did not have a motorcycle endorsement and was operating the motorcycle in violation of the restrictions on his instructional permit. He argued that the evidence was not relevant to the determination of negligence and that its prejudicial effect outweighed its probative value. In an oral ruling, the judge agreed and refused to allow evidence related to Lutz's licensing status or permit violations.[4]
¶ 5 During trial, Lutz presented testimony regarding his experience riding motorcycles and other off-road vehicles. He also testified that he did not apply his brakes hard when he first saw the deer because he was concerned about losing control of the motorcycle before reaching the deer. Lutz requested a jury instruction on the duty of one confronted by an emergency, which the court gave. After trial, the jury returned a special verdict[5] for Lutz and the court entered judgment accordingly.
¶ 6 Kappelman appealed, alleging numerous errors including that the trial court erred in excluding the evidence relating to Lutz's license status and permit violations, and erred in giving an emergency instruction to the jury. In a published opinion, a divided panel of Division Three of the Court of Appeals held that the trial court did not abuse its discretion, and affirmed. Kappelman v. Lutz, 141 Wash.App. 580, 591, 170 P.3d 1189 (2007). A petition for review was filed with this court, which was granted. Kappelman v. Lutz, 164 Wash.2d 1001, 190 P.3d 54 (2008).

STANDARD OF REVIEW
¶ 7 A trial court's decision to exclude evidence will be reversed only where it has abused its discretion.[6]State v. Lord, 161 Wash.2d 276, 294, 165 P.3d 1251 (2007). An abuse of discretion occurs when the trial court's decision is based on untenable grounds or untenable reasons. See State v. Athan, 160 Wash.2d 354, 376, 158 P.3d 27 (2007).
¶ 8 We have not previously defined the proper standard of review for a trial court's decision to give or refuse to give an emergency instruction. A trial court's decision to give a jury instruction is reviewed de novo if based upon a matter of law, or for abuse of discretion if based upon a matter of fact. See State v. Walker, 136 Wash.2d 767, 771-72, 966 P.2d 883 (1998). Unlike the self-defense instruction at issue in Walker, the emergency doctrine has no objective component; the trial court is not required to draw any legal conclusions to determine whether the doctrine applies. Compare Walker, 136 Wash.2d at 772, 966 P.2d 883, with Brown v. Spokane County Fire Prot. Dist. No. 1, 100 *289 Wash.2d 188, 197, 668 P.2d 571 (1983).[7] The trial court must merely decide whether the record contains the kind of facts to which the doctrine applies. Therefore, we review the trial court's decision to give an emergency instruction for abuse of discretion.

ANALYSIS
¶ 9 We first decide whether the trial court abused its discretion by excluding evidence that Lutz did not have a motorcycle endorsement and violated the conditions of his instructional permit. We must also decide whether the trial court abused its discretion in giving the jury an instruction on emergency.

A. License Status

¶ 10 Holz v. Burlington N. R.R., 58 Wash. App. 704, 711-13, 794 P.2d 1304 (1990), is informative. Holz died when he unwittingly drove his motorcycle at night into a black railroad tank car straddling an unlit road. Id. at 705, 794 P.2d 1304. Holz's family sued Burlington Northern for damages. Id. At the time of the accident, Holz had neither a motorcycle endorsement nor a learner's permit. Id. at 705-06, 794 P.2d 1304.
¶ 11 Burlington Northern sought to prove contributory negligence. Prior to trial, the plaintiffs moved to exclude any reference to the fact that Holz was not licensed to ride a motorcycle. Id. at 705, 794 P.2d 1304. Burlington Northern argued that Holz's unlicensed status was relevant because it was a cause-in-fact of the accident (i.e., without Holz's violation of the statute, there would have been no accident). Id. at 705-06, 709, 794 P.2d 1304. The trial judge excluded the evidence. Id. at 705, 794 P.2d 1304. The Court of Appeals affirmed, holding that the standard for such decisions is whether there is a causal connection between the statutory violation and the accident.[8]Id. at 708, 794 P.2d 1304.
[T]he crucial question [is]: Would a person with a motorcycle endorsement, enabling that person to ride unsupervised and at night, have been any better off, i.e., any less likely to have suffered the same fate?...
If a rider with a motorcycle endorsement would have suffered the same fate, evidence that Jody Holz lacked an endorsement would be irrelevant.
Id. at 707-08, 794 P.2d 1304 (citing ER 401).[9]
¶ 12 The Court of Appeals rejected Burlington Northern's cause-in-fact argument as insufficient to establish a causal connection. Id. at 709, 794 P.2d 1304. The Holz court also distinguished foreign cases where evidence of license status had been admitted, noting that in each case, the evidence supported an inference that the alleged negligence was a proximate cause of the injury. Id. at 710, 794 P.2d 1304. And the court emphasized that in Holz's case there was no evidence that a properly licensed operator would have been less likely to collide with the tank car. Id. at 710, 794 P.2d 1304. Rather, the crucial factor contributing to the accident was poor visibility, which would have affected licensed and unlicensed riders equally. Id. at 711, 794 P.2d 1304. The Court of Appeals held that because a properly licensed rider would have suffered the same fate, the evidence of Holz's unlicensed status was properly excluded. Id. at 713, 794 P.2d 1304. The court also held that even if the excluded evidence were relevant, it was inadmissible *290 under ER 403 because it had the danger of unfair prejudice.[10]Id. at 708, 794 P.2d 1304.
¶ 13 The trial court in this case applied similar reasoning:
The general rule as set forth in Holtz [sic] is ... the fact that somebody is not licensed... is irrelevant.... I can't find that the fact that Mr. Lutz was operating without a valid endorsement is really relevant to how he operated the motorcycle.
The real issue in this case is was he ... negligent? ... The fact that he wasn't fully qualified under state law as a motorcycle operator doesn't mean that he was or wasn't negligent.
Report of Proceedings, Motions in Limine (Sept. 20, 2005) at 15 (second and fourth alterations in original). The Court of Appeals approved. See Kappelman, 141 Wash. App. at 584-85, 170 P.3d 1189 (quoting Holz, 58 Wash.App. at 707, 794 P.2d 1304).
¶ 14 We caution that evidence of unlicensed status may be relevant in other cases. Under our modern rules of evidence, the threshold to admit relevant evidence is low and even minimally relevant evidence is admissible. State v. Gregory, 158 Wash.2d 759, 835, 147 P.3d 1201 (2006). Another trial court may have decided that evidence of Lutz's license violations was relevant. But even relevant evidence must be excluded if its probative value is substantially outweighed by the danger of unfair prejudice. Here, the trial court recognized that this kind of evidence carries a very high potential of unfair prejudice. And the probative value of such evidence was relatively low because the jury heard other evidence relating to Lutz's skill and experience operating motorcycles. The trial court's decision to exclude the evidence was based on these legitimate considerations, and therefore we cannot say it was based on untenable grounds.

B. Emergency Instruction

¶ 15 Jury instructions must be considered in their entirety. Brown, 100 Wash.2d at 194, 668 P.2d 571. The sudden emergency doctrine recognizes that when placed in a position of danger, one does not always act as prudently as one might have had there been time for deliberation.[11] Virgil G. Gillespie, Comment, The Sudden Emergency Doctrine, 36 Miss. L.J. 392, 395 (1965). The doctrine applies only in limited circumstances and recognizes the necessity of quick choice between courses of action when such peril arises. Seholm v. Hamilton, 69 Wash.2d 604, 605, 419 P.2d 328 (1966). Importantly, the doctrine "comprehends the availability of and a possible choice between courses of action after the peril arises. Otherwise, the doctrine blends into or merges with the theory of unavoidable accident." Id. at 609, 419 P.2d 328. A defendant who is suddenly confronted by an emergency through no fault of his own and chooses a damaging course of action in order to avoid the emergency is not liable for negligence although the particular act might constitute negligence had no emergency been present.[12]Brown, 100 Wash.2d at 197-98, 668 P.2d 571. Even where there is conflicting evidence, the emergency instruction may be proper. Kappelman, 141 Wash.App. at 589, 170 P.3d 1189 *291 (citing Tuttle v. Allstate Ins. Co., 134 Wash. App. 120, 131, 138 P.3d 1107 (2006)).
¶ 16 On the facts of this case, the trial court did not err in giving the emergency instruction. Deer are quick, erratic, and unpredictable; they may run to the road and then across or suddenly freeze. The appearance of a deer on the road can happen suddenlyas it did hereand is rare enough that a driver might not reasonably anticipate its occurrence.[13] The trial court's decision to give the emergency instruction here was not an abuse of discretion.

CONCLUSION
¶ 17 The Court of Appeals is affirmed.
WE CONCUR: ALEXANDER, C.J., C. JOHNSON, MADSEN, SANDERS, CHAMBERS, OWENS, FAIRHURST, JJ., and QUINN-BRINTNALL, J.P.T.
NOTES
[1] Kappelman has since married and changed her legal name to Amber Strain.
[2] See RCW 46.20.510(2).
[3] Lutz testified at trial that although he was familiar with the fact that there were deer in the area, and that they come out at dusk, he was nevertheless surprised to see a deer.
[4] Although the trial court's ruling emphasized relevance, it also noted that the evidence would be "highly prejudicial." Report of Proceedings, Motions in Limine (Sept. 20, 2005) at 15 ("we all know that juries often make decision (sic) based on things like that and that's not what a jury should be making a decision on in this case").
[5] "A verdict in which the jury makes findings only on factual issues submitted to them by the judge, who then decides the legal effect of the verdict." BLACK'S LAW DICTIONARY 1697 (9th ed.2009).
[6] We have occasionally held that the abuse must be manifest, see, e.g., State v. Neal, 144 Wash.2d 600, 609, 30 P.3d 1255 (2001), but this does not appear to be the general rule.
[7] Although our review of the trial court's refusal to give an emergency instruction in Brown was apparently de novo, Brown contains no discussion of the appropriate standard of review. See 100 Wash.2d at 197, 668 P.2d 571.
[8] Holz relied on two of our cases. In Switzer v. Sherwood, 80 Wash. 19, 141 P. 181 (1914), we introduced the causal connection requirement as a limitation on the defense of contributory negligence. We held that, absent a causal connection between the act involved in the violation of the statute and the act causing the injury, that defense is not available. Id. at 23, 141 P. 181. In Mills v. Park, 67 Wash.2d 717, 409 P.2d 646 (1966), we held that evidence of a driver's unlicensed status was properly excluded where the record showed no causal connection between license status and the alleged negligence. Id. at 720-21, 409 P.2d 646.
[9] Irrelevant evidence is inadmissible. See ER 402. Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." ER 401.
[10] "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury...." ER 403. In practice, the judge must balance the potential for unfair prejudice against the evidence's probative value. In re Det. of Thorell, 149 Wash.2d 724, 758, 72 P.3d 708 (2003).
[11] The purpose of the doctrine "is to emphasize the circumstances surrounding an accident to assist a jury in determining if a party has failed to meet its required duty of care." Scott Andrew Irby, Note, Wiles v. Webb: The Abrupt End of the Sudden Emergency Doctrine in Arkansas, 51 ARK. L.REV. 833, 839 (1998) (citing RESTATEMENT (SECOND) OF TORTS § 296 (1965)). Those acting in an emergency are still held to a reasonable person standard of care. Id. at 844 (citing W. PAGE KEETON ET AL., PROSSER AND KEETON ON THE LAW OF TORTS § 33, at 196-97 (5th ed.1984)).
[12] Not every sudden occurrence will constitute an emergency. See, e.g., Seholm, 69 Wash.2d at 605, 419 P.2d 328 (pedestrian crossing road at night); Mills, 67 Wash.2d at 719, 409 P.2d 646 (rear-end collision); Brown, 100 Wash.2d at 197, 668 P.2d 571 (fire truck entering an intersection); Sonnenberg v. Remsing, 65 Wash.2d 553, 556, 398 P.2d 728 (1965) (vehicle parked partway onto roadway); Johnson v. Barnes, 55 Wash.2d 785, 790, 350 P.2d 471 (1960) (child ran onto arterial and into the side of a car).
[13] We stress that the sudden emergency instruction is not appropriate in every situation where a driver's way is obstructed. When drivers take to the roads, they assume the risks that are inherent to the task at hand. Drivers faced with reasonably anticipated risks should be held to an ordinary negligence standard when determining fault.